UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Estate of Robert Pardy,
through its administrators
Kyley Gobin and Sara Pardy; and
Estate of Cody Pardy, through
its administrator Dorothy Ferland,
    Plaintiffs

    v.                                               Civil No. 09-cv-192-SM
                                                     Opinion No. 2010 DNH 087

Alabama Farmers Cooperative, Inc.
d/b/a Bonnie Plant Farm; Highlands
Fuel Delivery, LLC; and Johnson
& Dix Fuel Corporation,
    Defendants

**O R D E R**

Alabama Farmers Cooperative ("AFC") operates agricultural businesses and greenhouses around the country, including Bonnie Plant Farm in Lempster, New Hampshire. Robert Pardy was employed at Bonnie Plant Farm as a member of the "dirt crew." Additionally, in exchange for performing various handy-man and security services, he and his son Cody were permitted to live rent-free in a home on the Lempster farm.

On or around May 30, 2008, Robert and Cody Pardy tragically died in that home from carbon monoxide poisoning. The New Hampshire State Fire Marshal's office concluded that, because a corroded exhaust pipe between the furnace and chimney had collapsed and fallen to the floor, exhaust from the furnace had been venting directly into the house.

In June of 2009, the estates of Robert and Cody brought suit against AFC, alleging that its agents negligently maintained the house and its heating system (count one) and that, as landlord, AFC breached its implied warranty of habitability (count two). The estates also brought a claim against Highlands Fuel Delivery, LLC (formerly Irving Oil Corporation, which succeeded Johnson & Dix Fuel Corporation) alleging that Highlands' agents (or those of its predecessors) negligently inspected, maintained, and/or serviced the heating system (count three).[1]

AFC now moves for summary judgment on the two claims brought against it by the Estate of Robert Pardy, asserting that, as a matter of law, those claims are barred by New Hampshire's Workers' Compensation Law. Pardy's estate objects. For the reasons set forth below, AFC's motion is denied.

## Standard of Review

When ruling on a party's motion for summary judgment, the court must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990). Summary judgment is appropriate

---

[1] In 2006, Johnson & Dix sold its gas and oil business to Irving Oil Corporation. Subsequently, Irving converted to a limited liability corporation known as Highlands Fuel Delivery, LLC.

when the record reveals "no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In this context, "a fact is 'material' if it potentially affects the outcome of the suit and a dispute over it is 'genuine' if the parties' positions on the issue are supported by conflicting evidence." Int'l Ass'n of Machinists & Aerospace Workers v. Winship Green Nursing Ctr., 103 F.3d 196, 199-200 (1st Cir. 1996) (citations omitted).

**Discussion**

I.  The Parties' Legal Positions.

An accidental injury or death is compensable under New Hampshire's Workers' Compensation Law if that "injury or death arose out of and in the course of employment." N.H. Rev. Stat. Ann. ("RSA") 281-A:2 XI. To meet that requirement, an accidental injury or death must have: (1) resulted from a risk created by the employment, and (2) arisen in the course of employment, in that (a) it occurred within the boundaries of time and space created by the terms of employment and (b) it occurred in the performance of an activity related to employment, including a personal activity that was reasonably expected and not forbidden by the employer, or an activity of mutual benefit to the employer and employee. See Murphy v. Town of Atkinson, 128 N.H. 641, 645-46 (1986). See also Gagnon v. New Hampshire Ins. Co., 133 N.H. 70, 76 (1990) (holding that injuries sustained by a camp

3

counselor during a one-hour staff free swim in the camp's pool were sustained in the course of her employment). In short, to be covered by the Workers' Compensation Law, an injury must be "related to employment in terms of time, space and subject matter." Murphy, 128 N.H. at 645.

Under New Hampshire law, employees covered by workers' compensation "are conclusively presumed to have waived common law rights against their employers in return for the protection and benefits of the statutes." In re Abbott, 139 N.H. 412, 416 (1995). See also O'Keefe v. Associated Grocers of New England, Inc., 120 N.H. 834, 835-36 (1980) ("The statute clearly prohibits an employee from maintaining a common-law action against his employer for personal injuries arising out of the employment relationship."). See generally RSA 281-A:8 I. It is, then, not surprising that AFC says Robert Pardy's death "arose out of and in the course of" his employment at Bonnie Farm and, therefore, asserts that his estate's common law tort claims are barred by the Workers' Compensation Law.

Pardy's estate challenges that conclusion, however, invoking what is known as the "dual capacity doctrine."

> The "dual capacity" doctrine permits an employer, normally shielded from tort liability by the exclusive remedy principle, to become liable in tort to his own employee if he acts, in addition to his capacity as an employer, in a second capacity conferring on him

4

>obligations independent of those imposed on him as employer.

Robbins v. Seekamp, 122 N.H. 318, 321 (1982) (citation omitted). For the dual capacity doctrine to apply, the employee must demonstrate that, at the time of his or her injuries, the "dominant relationship" between the parties was something other than that of employer/employee. See Ryan v. Hiller, 138 N.H. 348, 351 (1994); Holzworth v. Fuller, 122 N.H. 643, 645 (1982). See also Mello v. Gouin's Plumbing & Heating Co., 137 N.H. 675, 679 (1993) (Batchelder, J., dissenting) ("The dual capacity doctrine may permit an employee to sue his or her employer when the employment relationship was not the 'dominant' relationship between the parties when the accident occurred.").

In this case, Pardy's estate says the "dominant relationship" between AFC and Pardy at the time of his death was one of landlord/tenant, so its claims against AFC are not barred by New Hampshire's Workers' Compensation Law.

II. The Parties' Factual Assertions.

The dispositive question presented by AFC's motion is, in essence, this: With regard to Robert Pardy's occupancy of the farmhouse, was he:

>(a) an employee of AFC, on call continuously, who was partially compensated for his labor with rent-free housing, or

>    (b)  a tenant of AFC, who paid rent in kind, with
>         his labor?

In support of its view that Robert Pardy's death arose out of and in the course of his employment, AFC says the following:

1. As a condition of his employment by AFC, Pardy was on call 24 hours a day, seven days a week and was responsible for performing work-related tasks (such as unloading delivery trucks) at all hours of the day and night;

2. Pardy was given "free use of the farmhouse in exchange for the services he provided twenty four hours a day, seven days a week, throughout the year." Defendant's memorandum (document no. 11-1) at 8; and

3. "Pardy's 24/7 presence on the premises was necessary and essential to his position as a handyman, since he was required to be available immediately to address problems with the greenhouses or any other maintenance issues that may arise. As a result, it was a condition of his employment that Pardy reside at the yellow farmhouse." Id. at 8-9.

Although the parties do not expressly make the point, the implication is that Pardy was an employee at will and did not have a written employment contract with AFC. The record does, however, contain a copy of his rental agreement for the period of July 5, 2005, through July 5, 2006. It provides that "[r]ent for the dwelling is paid by labor of grass cutting, removal of trash and litter, snow removal, and security of grounds." Rental Agreement (document no. 11-3) at 1. Parenthetically, the court notes that the record also includes a copy of an undated (though

6

seemingly earlier) hand-written rental agreement between Mr. Pardy and Bonnie Farm.  <u>See</u> Document no. 57-8.

Although the terms of the Rental Agreement obligated Pardy to perform duties over the entire farm complex (e.g., remove snow from all parking areas on the farm grounds and shovel all roofs on premises), those duties appear to be distinct from, and in addition to, the duties performed by other members of the Bonnie Farm "dirt crew."  Accordingly, in support of their view that the dominant relationship between AFC and Pardy (vis-a-vis his death by asphyxiation in the farmhouse) was one of landlord/tenant, Pardy's estate says:

1.  Mr. Pardy's residence in the farmhouse was unrelated to his employment as a member of the dirt crew, as evidenced by the fact that he "did not work in the greenhouse when he first moved into the Farmhouse in 2004.  He did not start working in the greenhouse until late in the season in 2005."  Plaintiff's memorandum (document no. 57-1) at 13;

2.  Residing in the farmhouse was <u>not</u> a condition of Pardy's employment on the dirt crew; for example, the Rental Agreement does not provide that he could be evicted if he was fired from his job on the dirt crew;

3.  The Rental Agreement itself contemplates that Pardy was a tenant, rather than employee, by specifying that it was a "rental agreement" for "non-labor of rent" and repeatedly referring to Pardy as the "tenant";

4.  Mr. Pardy's original (handwritten) lease with Bonnie Farm provided that in lieu of performing specified maintenance and security tasks, he could pay $500 per month as rent

       for the farmhouse. And, says his estate, "[t]he reason he had that option is because [living in the farmhouse] was not contingent upon his working for Bonnie Plant Farm 24/7 and further because it was a rental agreement." Id. at 16;

5. The W-2's that Bonnie Plant Farm provided Mr. Pardy did not include as income to Pardy the fair market value of occupying the farmhouse, as would be required if his living there were truly a condition (and benefit) of working at the farm. According to Pardy's estate, "The reason it did not is because prior to his death Bonnie Plant Farm did not consider his residing in the farmhouse as part of his employment." Id. at 18; and

6. At the end of each growing season, AFC laid off Pardy and reported to the State of New Hampshire that he was unemployed, despite the fact that he continued to live in the farmhouse in exchange for providing various specified types of handyman and security services to AFC.

III. AFC is not Entitled to Summary Judgment.

"The question whether an employee's injury arose out of or in the course of her employment is one of fact." Gagnon, 133 N.H. at 75 (citing Murphy, 128 N.H. at 646). And, on the record as presently developed, a reasonable and properly instructed jury could plausibly conclude that Pardy's death did not arise out of and in the course of his employment by AFC. Consequently, the court cannot conclude, as a matter of law, that the claims advanced by Pardy's estate are barred by New Hampshire's Workers' Compensation Law.

## Conclusion

For the foregoing reasons, as well as those set forth in plaintiff's legal memorandum, AFC has failed to demonstrate that it is entitled to judgment as a matter of law. Accordingly, its motion for summary judgment (document no. 11) is denied.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

May 24, 2010

cc: Arend R. Tensen, Esq.
    Stephen J. Schulthess, Esq.
    Debbie L. Makris, Esq.
    Eric D. Jones, Esq.
    John A. Hobson, Esq.
    Marc B. Heath, Esq.
    David P. Cullenberg, Esq.
    Randy J. Creswell, Esq.
    R. Matthew Cairns, Esq.